UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Steven Duane Smith,                                                Civil No. 05-872 (PAM/JSM)

                  Plaintiff,

v.                                                                 **MEMORANDUM AND ORDER**

City of New Hope and Officers
Crocker and Johnson and Other
Unknown Officers,

                  Defendants.

---

This matter is before the Court on Defendants' Motion for Summary Judgment. For the reasons that follow, the Motion is granted in part and denied in part.

**BACKGROUND**

On February 7, 2004, Plaintiff Steven Duane Smith returned home from work and had some cocktails with his wife and his mother-in-law. Sometime during the evening, Smith and his wife began joking with each other. The wife, apparently upset at a joke, hit Smith in the face. Smith then placed a 911 call to report a domestic dispute. New Hope Police Sergeant Scott Crocker, Officer David Johnson, and two reserve officers responded to the 911 call. The parties provide different accounts of what transpired at the Smith residence.

**A.     Smith's Version**

In his deposition, Smith provided the following account of the events at issue. After arriving at the scene, Sergeant Crocker "bum-rushed" Smith up the staircase and shoved him against the wall, grasping Smith's throat as leverage. Smith claims that he completely

cooperated and complied with Sergeant Crocker's order to turn around and face the wall. As Smith faced the wall, Sergeant Crocker forced Smith to the ground. Thereafter, another officer kneed Smith in the neck while another handcuffed him.

Thereafter, Smith heard police officers shout at his wife, so he begged the officers not to hurt her. Sergeant Crocker again slammed Smith to the ground, and an unknown officer firmly placed a foot on his back. After Sergeant Crocker ordered two officers to take Smith outside, the officers dragged Smith down the stairs, injuring his ankle. The officers then threw Smith face forward into the snow while his hands were still cuffed behind his back. As Smith was lying in the snow, Sergeant Crocker and other officers began kicking him.[1] Sergeant Crocker kicked Smith directly in his left eye.

**B.     Police Officers' Version**

Sergeant Crocker and Officer Johnson provide a very different account of the events at issue. They contend that they arrived at the Smith residence and Smith allowed the officers to enter without struggle. When the officers entered the home, they noticed Smith had a swollen and bloody left eye. The officers then followed Smith up the staircase.

The officers immediately separated Smith and his wife so that they could obtain independent accounts of what transpired. Officer Johnson took Smith down the hallway and Sergeant Crocker spoke with Smith's wife in the kitchen. Officer Johnson requested Smith's identification. Smith went to his bedroom to obtain his license and Officer Johnson followed him. When Smith realized that Officer Johnson was following him, he belligerently refused

---

[1] Smith's mother-in-law also testified that she witnessed police officers kicking Smith.

to allow the officer into the bedroom. Noticing the dispute, Sergeant Crocker approached Officer Johnson and Smith. Thereafter, both officers determined that Smith would be placed in handcuffs.

Sergeant Crocker then took Smith into the bedroom and instructed Officer Johnson to get the wife's statement. During Officer Johnson's conversation with the wife, she walked down the hallway towards the bedroom, apparently intending to provoke an argument with Smith. Sergeant Crocker then determined that both Smiths should be arrested for domestic assault and obstructing legal process.

While Sergeant Crocker attempted to handcuff Smith's wife, chaos ensued and Sergeant Crocker placed both Smiths face down on their bed to finish handcuffing the wife. While this was occurring, Smith's mother-in-law and daughter both yelled at the officers. Officer Johnson removed his taser from his holster and pushed the mother-in-law back to keep her from obstructing the arrests.

Sergeant Crocker escorted Smith out of the residence first. As Sergeant Crocker was bringing Smith down the staircase, Smith fell down and complained that his ankle was broken. At this point, Smith was lying outside in the snow. Sergeant Crocker requested a blanket for Smith and called an ambulance. Officer Johnson escorted the wife to a police vehicle and transported her to the police station.

**C.    Injuries**

The parties do not dispute that Smith was immediately transferred to North Memorial Hospital by ambulance. The medical records confirm that Smith suffered from a left orbital blowout fracture to his left eye. The injury required surgery whereby a metal titanium mesh

device was used to rebuild the orbital wall. The medical records also confirm that Smith suffered a blunt injury to his nose. No medical records reflect injury to Smith's leg or ankle.

### D. Contemporaneous Statements

Despite Smith's claim that Defendants caused his eye injury, contemporaneous statements exist indicating that his wife punched him in the eye. First, the 911 transcript reveals that Smith reported: "my eye's busted and she's right here"; "my eye is beat"; "she bust my damn eye"; and "she (inaudible) my damn eye for nothing. Okay. She needs some help and she needs to go to jail." (Hiveley Aff. Ex. B.) In his deposition, Smith explained that his statements to the 911 operator were merely slang, and that any reference to being punched in the eye was a generic reference to being punched in the face. In particular, he testified: "If somebody punched me in the face, you are going to bust me in the eye." (Id. Ex. A (Pl. Dep.) at 33-34.)

Medical records also indicate that Smith's wife injured his eye. The Emergency Room Report states, "According to him, he got into an altercation with his wife and she hit him in the left eye. He is now complaining of severe pain about the left eye." (Id. Ex. F.) The Admission History reports, "The patient was hit in his left eye by the wife." (Id.) Smith explains these statements by contending that he feared for the safety of himself and his family if he told medical staff that police officers kicked him.

## DISCUSSION

Smith asserts two claims against Defendants: a 42 U.S.C. § 1983 claim for violations of the Fourth and Fourteenth Amendments, and a common law negligence claim. Defendants seek summary judgment on both claims.

**A.     Standard of Review**

Summary judgment is proper when the evidence viewed in a light most favorable to the nonmoving party demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, only disputes of facts that might affect the outcome of the suit under the governing substantive law will preclude summary judgment. Id. The moving party bears the burden of showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to all inferences that may be reasonably drawn from the underlying facts in the record. Meriwether v. Caraustar Packaging Co., 326 F.3d 990, 992-93 (8th Cir. 2003). However, the nonmoving party may not merely rest upon allegations or denials in its pleadings — it must set forth specific facts showing that there is a genuine issue for trial. Anderson, 477 U.S. at 256.

**B.     Claims Against Unknown Officers**

The parties agree that the claims against the unknown officers should be dismissed. See Madison v. City of Minneapolis, No. 02-4257, 2004 WL 1630953, at *3 n.3 (D. Minn. July 15, 2004) (Tunheim, J.) (dismissing claims against unnamed police officers because no information was presented). The Court therefore grants summary judgment on all claims against the unnamed officers.

**C.    Claims against Sergeant Crocker and Officer Johnson**

    1.    Constitutional Claim

Smith claims that Sergeant Crocker and Officer Johnson violated the Fourth and Fourteenth Amendments through the use of excessive force.[2]  Defendants argue that the claim should be dismissed based on qualified immunity and statutory immunity.

        a.    Qualified Immunity

The Court conducts a three-part inquiry to determine whether qualified immunity applies: (1) whether Smith has asserted a violation of his constitutional rights, (2) whether the allegedly violated constitutional right was clearly established, and (3) whether there are no genuine issues of material fact regarding whether a reasonable official would have known that the alleged acts violated that right. Foulks v. Cole County, 991 F.2d 454, 456 (8th Cir. 1993). The Court applies an objective reasonableness standard to analyze claims that law enforcement officers have used excessive force. Graham v. Connor, 490 U.S. 386, 395 (1989). Reasonableness must be judged from the perspective of a reasonable officer on the scene, rather than with the vision of hindsight. Id. at 396. The reasonableness determination must allow for the fact that "police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary." Id. at 396-97. The question is whether the officer's action is objectively reasonable, without regard to their underlying intent or motivation. Id. at 397. The Court

---

    [2] Although Count I of the Complaint alleges a § 1983 violation due to unlawful seizure, Smith does not claim that his arrest was unconstitutional.

considers the circumstances of each particular case, including whether the individual posed an immediate threat to the safety of the officer or others. Id. at 396.

Defendants argue that the record does not support a finding of excessive force. They rely on Fessler v. Metropolitan Airport Commission, No. 05-781, 2006 WL 1085164 (D. Minn. Apr. 25, 2006) (Montgomery, J.), wherein the court granted the defendants summary judgment on an excessive force claim because the claim was not supported by evidence in the record other than the plaintiff's own testimony. Id. at *3. However, Fessler is distinguishable. In that case, a nearby security camera captured the incident on videotape so that the court was able to view the sequence of events at issue. Id. at *1. Based on the videotape, the court determined that conclusive evidence refuted the plaintiff's claim. Id. at *3. That is not the case here.

Rather, Smith's deposition testimony renders this case more akin to Mayard v. Hopwood, 105 F.3d 1226 (8th Cir. 1997). In that case, St. Paul police officers visited the plaintiff's liquor store in order to issue a citation for selling liquor without a license. Id. at 1227. Upon the officers' arrival, the plaintiff became upset and agitated. Id. Based on this behavior, the officers decided to arrest the plaintiff. Id. During the course of the arrest, the plaintiff began to struggle, and the officers were forced to handcuff the plaintiff and place her in a hobble restraint. Id. Once restrained, the plaintiff alleged that the officers slapped her in the face, punched her in the chest, and used a racial epithet. Id. After the district court granted the police officers summary judgment on her excessive force claim, the plaintiff appealed. Although the Eighth Circuit Court of Appeals found the use of handcuffs and hobble restraint objectively reasonable, it determined that the force allegedly used once the plaintiff was

restrained was not. Id. at 1228. It therefore concluded that the conflicting accounts of events resulted in an issue of material fact that precluded summary judgment. Id.; see also Smith v. Basin Park Hotel, Inc., 30 F.3d 810, 813 (8th Cir. 2003) (finding that a question of fact remained despite the "questionable timing and contrary information in [the plaintiff's] testimony").

Because of the vastly different account of what transpired at the Smith residence, the Court cannot determine as a matter of law whether Sergeant Crocker and Officer Johnson exercised excessive force.[3] Similarly, the Court cannot determine whether the force allegedly used against Smith was objectively reasonable. Accordingly, summary judgment based on qualified immunity is inappropriate.

        b.        Statutory Immunity

Defendants also argue that the police officers are entitled to immunity under Minnesota Statute § 629.341, which provides: "A peace officer acting in good faith and exercising due care in making an arrest . . . is immune from civil liability that might result from the officer's action." Viewing the evidence most favorable to Smith, the Court cannot conclude as a matter of law that Sergeant Crocker and Officer Johnson exercised good faith and due care during their response to the domestic disturbance. Consequently, the Court denies summary judgment based on the statutory immunity defense.

    2.        Negligence Claim

---

[3] The right to be free from excessive force is a clearly established right. Crumley v. City of St. Paul, 324 F.3d 1003, 1007 (8th Cir. 2003).

Defendants rely on the official immunity doctrine to argue that the negligence claim fails as a matter of law. Official immunity protects public officials from state law claims arising from discretionary acts taken in the course of their official duties. Elwood v. Rice County, 423 N.W.2d 671, 677 (Minn. 1988). Because of the discretion needed to carry out their duties, police officers are generally entitled to official immunity. Id. at 678; Dokman v. County of Hennepin, 637 N.W.2d 286, 296 (Minn. Ct. App. 2001). "Only when officials act outside the scope of their charged authority can they be deemed to have waived this immunity and be held personally liable for their negligence." Dokman, 637 N.W.2d at 296.

To determine whether official immunity applies, the Court must answer two questions: "(1) whether the alleged acts are discretionary or ministerial; and (2) whether the alleged acts, even though of the type covered by official immunity, were malicious or willful and therefore stripped of the immunity's protection." Id. at 296 (citation omitted). Malice is "the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." Id. (citation omitted).

Smith concedes that Sergeant Crocker and Officer Johnson were carrying out discretionary duties; however, he submits that they acted maliciously and willfully. According to Smith, Sergeant Crocker and Officer Johnson violently beat him despite his full compliance and cooperation. Based on his version of events, the Court finds a question of material fact remains as to whether Sergeant Crocker and Officer Johnson acted maliciously. Accordingly, the Court denies summary judgment on the negligence claim.

**D.      Claims against the City of New Hope**

On the excessive force claim, Defendants argue that the City of New Hope cannot be liable because there was no underlying constitutional violation.[4]  See Abbott v. City of Crocker, 30 F.3d 994, 998 (8th Cir. 1994) (citations omitted).  On the negligence claim, Defendants argue that vicarious official immunity protects the City from the claim.  See Wiederholt v. City of Minneapolis, 581 N.W.2d 312, 316 (Minn. 1998).  However, both arguments are based on the success of the underlying defenses relating to the individual police officers.  Consequently, summary judgment on the claims against the City of New Hope is inappropriate.

**CONCLUSION**

Smith's deposition testimony creates controvertible questions of fact as to whether Sergeant Crocker and Officer Johnson acted negligently and in violation of Smith's constitutional right to be free from excessive force.  Accordingly, **IT IS HEREBY ORDERED** that  Defendants' Motion for Summary Judgment (Docket No. 8) is **GRANTED in part** and **DENIED in part**:

1.      All claims against Other Unknown Officers are **DISMISSED with prejudice**; and

---

[4] At oral argument, Smith clarified that he is not raising a Monell claim.  Moreover, such a claim is unviable as Smith presents no evidence of a custom, practice, or policy that violates his constitutional rights.  Monell v. Dep't of Social Servs., 436 U.S. 658, 690-91 (1978).

2.      The excessive force claims against the City of New Hope, Sergeant Crocker, and Officer Johnson remain.

Dated: July 18, 2006

                                                    s/ Paul A. Magnuson  
                                                    Paul A. Magnuson  
                                                    United States District Court Judge